UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

12-CV-21411-WPD-DIMITROULEAS/SNOW

SOLIDDA GROUP, S.A.,
a Colombian corporation, and
CRISMA COMERCIALIZADORA, S.A.S.,
a Colombian corporation,

    Plaintiffs,

v.

SHARP ELECTRONICS CORPORATION,
a New York corporation,

    Defendant.
_____/

SHARP ELECTRONICS CORPORATION,
a New York corporation,

    Defendant/Counterclaim Plaintiff,

v.

SOLIDDA GROUP, S.A., a Colombian corporation,
CRISMA COMERCIALIZADORA, S.A.S., a Colombian
corporation, MOBILE TECHNOLOGIES SERVICES,
LLC, a Delaware limited liability company, MOBILE
TECHNOLOGIES SERVICES, S.A., a Panamanian
company; HERNANDO RAMON RUBIO DACOSTA,
JULIAN MONTEJO PERRY, SOCIEDAD COMERCIAL
ELECTROCENTER LTDA., a Chilean corporation,
JULIO ERAZO, *et al.*

    Counterclaim Defendants.
_____/

**SHARP ELECTRONICS CORPORATION'S OMNIBUS OPPOSITION TO THE
DISMISSAL MOTIONS BY MAYLEN VALDES, PINEIRO CALDERIN
CONSULTING, INC., AND TARGET ADVISORS, LLC [D.E. 469, 470 AND 471]**

Defendant/Counterclaim Plaintiff Sharp Electronics Corporation ("Sharp") hereby opposes the Motions to Dismiss Count VIII of the Third Amended Counterclaim [D.E. 469, 470 and 471] (the "Motions"), filed by Counterclaim Defendants Maylen Valdes ("Mrs. Valdes"), Pineiro Calderin Consulting, Inc. ("Pineiro Calderin") and Target Advisors, LLC ("Target Advisors," and together with Pineiro Calderin, the "Valdes Entities") (collectively, "Movants").

**PRELIMINARY STATEMENT**

Sharp's Third Amended Counterclaim (the "TAC") properly states claims against Mrs. Valdes and the Valdes Entities for unjust enrichment based on the benefits they received from a brazen conspiracy among Sharp's former insiders, who have since left the company, and Sharp's former customers, Plaintiff/Counterclaim Defendants Solidda Group, S.A. ("Solidda"), Crisma Comercializadora, S.A.S. ("Crisma"), and Counterclaim Defendant Sociedad Comercial Electrocenter Ltda. ("Electrocenter").  The conspirators collaborated to defraud Sharp of almost $50 million by (a) fabricating purported supply commitment agreements between Sharp and Solidda, Crisma and Electrocenter, as well as other documents purportedly corroborating the legitimacy of those fabricated agreements, (b) falsely claiming that Sharp breached those fabricated agreements by failing to deliver goods to Solidda, Crisma and Electrocenter, (c) deceptively inducing Sharp to pay cash and to provide credit to Solidda, Crisma and Electrocenter based on their false breach of contract claims, and (d) funneling kickbacks to disloyal Sharp employees and sales agents to compensate them for aiding the fraud, including by funneling payments through the Valdes Entities to compensate Counterclaim Defendant Juan Carlos Valdes ("Mr. Valdes") for aiding the fraud and to conceal the source of the funds.  Sharp also attached to the TAC several documents that the conspirators clearly forged and that

1

substantiate Sharp's claims.  The TAC refers to this scheme to defraud Sharp as the "Fraudulent Settlements Enterprise" ("FSE").

With respect to Movants, Sharp has alleged that Counterclaim Defendants Edward R. Fuller ("Fuller"), Mr. Valdes, Felipe Balbuena ("Balbuena"), Ian Arzuaga ("Arzuaga"), and Jorge Migliaccio ("Migliaccio") used the kickbacks they received from the FSE to enrich themselves – including by causing Counterclaim Defendants Agrasun Inc., Agrasun Holdings, Inc. ("Agrasun Holdings," and collectively with Agrasun Inc., "Agrasun"), Blue Star Consulting, Ltd. ("Blue Star Consulting"), and Blue Star Holdings Corp. ("Blue Star Holdings," and collectively with Blue Star Consulting, "Blue Star") to pay hundreds of thousands of dollars to Mrs. Valdes and the Valdes Entities.  These kickbacks were paid for the benefit of Mr. Valdes and as compensation for his participation in the FSE.

Taking all of Sharp's allegations as true – as the Court must – Sharp unquestionably has alleged sufficient facts to raise not only a reasonable inference, but also the irrefutable conclusion, that Mrs. Valdes and the Valdes Entities were unjustly enriched by their receipt of the proceeds of the FSE as alleged in the TAC.  Movants' arguments to the contrary are baseless, and the Court should deny their Motions.

## FACTS

The TAC's well-pleaded allegations detail precisely how Movants were unjustly enriched by the FSE and demonstrate the baselessness of their arguments.  To avoid undue repetition, Sharp respectfully refers the Court to Sharp's oppositions to the pending dismissal motions filed by Solidda, Crisma, Julio Erazo and Agrasun Holdings, in which Sharp has described the pertinent facts in great detail.  *See* [D.E. 466] at 4-6; [D.E. 477] at 3-6; [D.E. 487] at 3-7.  In essence, the TAC details how, as part of the FSE, Sharp customers Solidda, Crisma and

Electrocenter conspired with Sharp's corrupt former employees Fuller, Balbuena and Mr. Valdes, and its sales agent Migliaccio to (a) fabricate purported supply agreements between Sharp and these customers, when in fact Sharp had never entered into these agreements, (b) assert fraudulent breach of contract claims against Sharp based on these contrived agreements, falsely claiming that Sharp had failed to deliver products, and (c) pay kickbacks to Sharp's former employees and sales agents for their assistance in fraudulently inducing Sharp to enter into these settlements.  *See* TAC ¶¶ 52-54, 56, 59-60, 62-63, 77, 79-80, 82-83, 87, 91-95, 99, 103-11, 114-15, 118, 122, 125-33, 136-41, 144-46, 151, 153, 156-63, 165-75, 179-82.

The TAC further details how Solidda and Electrocenter, in connection with their fraudulent claims against Sharp, both (a) entered into sham "consulting" agreements with former Sharp employee Arzuaga's company De Jure Mitigation Advisors LLC ("De Jure"), (b) concealed their relationships with De Jure from Sharp, (c) falsely represented to Sharp that the law firm of Payton & Associates, LLC ("Payton") was their lawyer, when Payton actually represented De Jure in connection with both disputes, (d) requested that Sharp pay the settlement proceeds to Payton and advanced pretextual reasons for doing so, and (e) paid De Jure millions of dollars in kickbacks from their respective settlements.  *See* [D.E. 466] at 9-12.  Sharp has alleged that De Jure received no less than $10 million in connection with Sharp's fraudulent settlements with Solidda and Electrocenter.  *See* TAC ¶ 4.  Notably, none of the Counterclaim Defendants has challenged any of the evidence that Sharp has provided to the Court to substantiate Sharp's allegations regarding the fabricated documents or kickback payments, nor could they, as the evidence of their conspiracy is irrefutable.

Migliaccio and Blue Star furthered the conspiracy by providing conduits for the distribution of the kickbacks.  In order to disguise the fruits of the fraud, De Jure did not pay the

3

settlement funds directly to the Sharp insiders who deceived Sharp into settling the fraudulent claims, but rather to the various companies that they controlled, including Migliaccio's companies Blue Star Consulting and Blue Star Holdings. Specifically, Sharp has alleged that Blue Star Consulting received over $530,000 from the proceeds of the fraudulent settlements. *See* TAC ¶ 167.

Blue Star also received unlawful payments from sources other than De Jure. As set forth in the TAC, between May and November 2010, Blue Star Consulting received an additional $1.3 million from Electrocenter pursuant to the corrupt Electrocenter-Blue Star Consulting Agreement. TAC ¶¶ 131-133.

Blue Star Consulting used the money it obtained from the FSE to enrich the conspirators by paying kickbacks to the companies they controlled. Sharp has alleged that Migliaccio and Blue Star Consulting financed Counterclaim Defendants Agrasun, Inc. and Agrasun Holdings, Inc. with the proceeds of the fraud, including by transferring $740,000 to Agrasun, Inc. between October 2010 and August 2011, and by transferring an additional $144,570 to Agrasun Holdings between November 2011 and June 2013. *See* TAC ¶ 174. As detailed in Sharp's TAC, Agrasun, which also accepted millions of dollars in illicit payments from De Jure, is only one of the many common links among the Sharp insiders who joined in the conspiracy. *See id.* ¶¶ 171-72. Both Fuller and Mr. Valdes occupied key positions at Agrasun, with Fuller serving as Chief Executive Officer and Valdes as Chief Operating Officer. *See id.* ¶¶ 171-72. And Sharp has identified hundreds of thousands of dollars of payments from Agrasun Holdings to Fuller and Valdes, including over $105,000 between March 2012 and January 2013 to Target Advisors, LLC, a company for which Valdes served as a managing member. *See id.* ¶ 175; *see also* Dismissal Motion of Target Advisors [D.E. 471, at 2] (acknowledging that "Target Advisors is a

corporation registered to counterdefendant Juan Valdes"). These payments were made as kickbacks for Mr. Valdes' participation in the conspiracy. *See id*.

Blue Star Consulting also used the money it obtained from the FSE to make its own illicit payments to the corrupt Sharp insiders, their wives, and their corporate *alter egos,* including Movants. These payments included over $840,000 to Mrs. Valdes and Pineiro Calderin, comprising (a) $15,300 in checks payable to Mrs. Valdes, (b) a $30,000 wire transfer to "Juan Carlos or Maylen Valdes," and (c) $794,712 in transfers to Pineiro Calderin. *See* TAC ¶ 177. Mrs. Valdes served as director of Pineiro Calderin, and Blue Star Consulting made these payments to Mrs. Valdes and Pineiro Calderin as kickbacks for Mr. Valdes' role in the FSE. *See id*.; *see also* Dismissal Motion of Pineiro Calderin [D.E. 470, at 2] (acknowledging that "Pineiro Calderin is a corporation registered to counterdefendant Maylen Valdes, the wife of former Sharp employee and counterdefendant" Mr. Valdes).

Sharp's allegations regarding these illicit payments, as well as the substantial benefits conferred on Mrs. Valdes, Pineiro Calderin and Target Advisors as compensation for Mr. Valdes' role in the FSE, are more than sufficient to support claims under Florida law for unjust enrichment against Mrs. Valdes and the Valdes Entities.

## ARGUMENT

### I. The Legal Standard Sharp's Counterclaims Must Satisfy.

Under Federal Rule of Civil Procedure 8(a)(2), Sharp's counterclaims need to contain only "a short and plain statement of the claim showing that [Sharp] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, in order to defeat the Motions, Sharp must show only that it has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if it "allows the court to draw the

5

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Further, the Court must "take the factual allegations in [Sharp's TAC] as true," *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008), and must "construe [the facts] in the light most favorable to [Sharp]." *See Baloco ex rel. Tapia v. Drummond Co., Inc.*, 640 F.3d 1338, 1345 (11th Cir. 2011); *see also West Coast Life Ins. Co. v. Ruth Secaul 2007-1 Ins. Trust*, No. 09-81049-civ, 2010 WL 27907, at *2 (S.D. Fla. Jan. 5, 2010) (Dimitrouleas, J.) ("The allegations of the claim . . . must be read to include *any* theory on which the plaintiff may recover.") (emphasis added) (citations omitted).

Sharp's counterclaims against Movants – Mrs. Valdes and the Valdes Entities –satisfy all of these requirements, and thus the Court should deny the Motion.

## II. Sharp Has Sufficiently Alleged Unjust Enrichment Claims Against Mrs. Valdes and the Valdes Entities.

Sharp has sufficiently alleged its claims for unjust enrichment against Mrs. Valdes and the Valdes Entities. A claim for unjust enrichment must allege: "(1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant has voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Morris v. ADT Sec. Services*, 580 F. Supp. 2d 1305, 1313 (S.D. Fla., 2008). The elements of a claim for unjust enrichment are met where the defendant and a third party enter into an arrangement, pursuant to which the third party wrongfully obtains funds from the plaintiff, and the third party pays kickbacks to the defendant. *See, e.g.*, *Williams v. Wells Fargo Bank, N.A.*, No. 11-21233-CIV, 2011 WL 4368980, at * 8-10 (S.D. Fla. Sept. 19, 2011) (denying motion to dismiss unjust enrichment claim where plaintiffs were required to make excessive

6

payments to a third party, and third party paid kickbacks to defendant pursuant to agreement between defendant and third party); *see also Ulbrich v. GMAC Mortg. LLC*, No. 11-62424-CIV, 2012 WL 3516499, at * 2 (S.D. Fla. Aug. 15, 2012). Sharp's allegations that Mrs. Valdes and the Valdes Entities received and retained hundreds of thousands of dollars that were wrongfully taken from Sharp through the FSE, and that these kickbacks were paid for the benefit of Mr. Valdes for his participation in the FSE, more than meet this test. *See* TAC ¶¶ 5, 26, 133, 175, 177, and *infra* at 2-5.

Movants' arguments that Sharp's claims fail because Sharp did not make any payments directly to Mrs. Valdes or the Valdes Entities are wrong as a matter of Florida law. Indeed, it would "undermine the equitable purpose of unjust enrichment claims" to dismiss a claim on the basis that "the benefit conferred by Plaintiff[] on Defendants did not pass directly from Plaintiff[] to Defendants – but instead passed through a third party." *Williams*, 2011 WL 4368980, at * 9; *Ulbrich*, 2012 WL 3516499, at * 2; *see also Feiner v. Innovation Ventures, LLC*, No. 12-62495-CIV, 2013 WL 2386656, at * 5 (S.D. Fla. May 30, 2013) (Dimitrouleas, J.) (denying motion to dismiss and holding that plaintiff adequately pleaded that it conferred a benefit on defendant energy drink manufacturer by purchasing energy drink through third-party convenience store).

Moreover, Movants' argument that Sharp has not pleaded facts sufficient to support the conclusion that Movants knew about these high six-figure sums of money, or their origin, defies credulity. The fact that Movants assert this position – despite the fact that (a) Target Advisors is registered to Mr. Valdes, *see* TAC ¶ 175 and [D.E. 471] at 2, (b) Pineiro Calderin is registered to Mrs. Valdes, *see* TAC ¶ 177 and [D.E. 470] at 2, and (c) Sharp has sufficiently alleged that these payments were kickbacks to Mr. Valdes for his participation in the FSE, TAC ¶¶ 175 and 177 – suggests that the Motions have been filed merely for the sake of form and should be denied.

7

Finally, contrary to Movants' contention that it would not be inequitable for Movants to retain the payments at issue because they "were the result of other outside business dealings not related to the alleged acts of the other parties in this action," Motions at 4, Sharp has plausibly alleged that the hundreds of thousands of dollars which Movants received were wrongfully taken from Sharp through the FSE, and that these kickbacks were paid for the benefit of Mr. Valdes and his wife for Mr. Valdes' participation in the FSE. *See* TAC ¶¶ 5, 26, 133, 175, 177, and *infra* at 2-5. These well-pleaded allegations, taken as true, are more than sufficient to establish that Movants directly benefitted from the fraud that it would be inequitable for Movants to retain these payments.[1]

## CONCLUSION

For the above reasons, the Court should deny the Motions.

---

[1] To the extent that Movants persist in their assertion that these payments were for other business dealings, Sharp is entitled to test Movants' contentions through discovery.

Respectfully submitted,

| | |
|---|---|
| CLEARY GOTTLIEB STEEN & HAMILTON LLP | STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON P.A. |
| EVAN A. DAVIS, ESQ.* edavis@cgsh.com LAWRENCE B. FRIEDMAN, ESQ.* lfriedman@cgsh.com One Liberty Plaza New York, NY 10006 Telephone: (212) 225-2850 | By:   /s/ Ana T. Barnett ANA T. BARNETT, ESQ. Florida Bar No. 217212 abarnett@stearnsweaver.com KELLY R. MELCHIONDO, ESQ. Florida Bar No. 582603 kmelchiondo@stearnsweaver.com |
| ANTONIO M. POZOS, ESQ.* apozos@cgsh.com 2000 Pennsylvania Avenue, NW Washington, DC 20006 Telephone: (202) 974-1740 Facsimile:   (202) 974-1999 | JONATHAN C. VAIR, ESQ. Florida Bar No. 80977 jvair@stearnsweaver.com STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON P.A. Museum Tower, Suite 2200 150 West Flagler Street Miami, FL 33130 Telephone:     (305) 789-3200 Facsimile:     (305) 789-2678 |
| *Admitted pro hac vice | |

- and -

JUAN P. MORILLO, Esq.
Florida Bar No. 135933
jmorillo@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
1299 Pennsylvania Ave. NW, Suite 825
Washington, D.C. 20004
Telephone: (202) 538-8000
Facsimile:  (202) 538-8100

*Counsel for Defendant/Counter-Plaintiff, Sharp Electronics Corporation*

9

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 13, 2014, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

        /s/    *Ana T. Barnett*
              Ana T. Barnett

## SERVICE LIST

### Case No. 12-CV-21411-WPD-DIMITROULEAS/SNOW

| | |
|---|---|
| Kevin C. Kaplan, Esq.<br>kkaplan@coffeyburlington.com<br>Armando Rosquete<br>arosquete@coffeyburlington.com<br>2699 South Bayshore Drive, PH<br>Miami, Florida 33133<br>Telephone No: 305-858-2900<br>Facsimile No: 305-858-5261<br><br>*Attorneys for Plaintiffs Solidda Group, S.A. and Crisma Comercializadora, SAS* | Jacqueline Becerra, Esq.<br>becerraj@gtlaw.com<br>GREENBERG TRAURIG, LLP<br>333 S. E. Second Avenue, Suite 4400<br>Miami, FL 33131<br>Telephone No: (305) 579-0500<br>Facsimile No: (305) 579-0717<br><br>*Attorney for Edward R. Fuller* |
| Silvia B. Piñera-Vazquez, Esq.<br>spinera@aol.com<br>Piñera-Vazquez Law Firm<br>International Center<br>1900 S.W. 3rd Avenue<br>Miami, FL 33129<br>Telephone No: (305) 443-0629<br>Facsimile No: (305) 858-6272<br><br>*Attorney for Juan Valdes, Maylen Valdes, Pineiro Calderin Consulting, Inc. and Target Advisors, LLC* | Susy Ribero-Ayala, Esq.<br>susy@riberoayalalaw.com<br>Susy Ribero-Ayala, P.A.<br>2525 Ponce De Leon Blvd, Suite 300<br>Coral Gables, FL 33134<br>Telephone No: (305) 854-4711<br><br>*Attorney for Felipe Balbuena, Ana Maria Balbuena, and Dajami Consulting Corp.* |
| Alexander Dombrowsky, Esq.<br>adombrowsky@robertallenlaw.com<br>Tom Farrar, Esq.<br>tfarrar@robertallenlaw.com<br>Robert Allen Law<br>Four Seasons Tower, Suite 1400<br>Miami, FL 33131<br>Telephone No: (305) 372-3300<br>Facsimile No: (305) 379-7018<br><br>*Attorneys for Julio Erazo and Sociedad Comercial Electrocenter, Ltda.* | Arnaldo Velez, Esq.<br>avelez@velezlawoffices.com<br>35 Almeria Avenue<br>Coral Gables, FL 33134<br>Telephone No: (305) 461-9499<br>Facsimile No: (305) 461-9498<br><br>*Attorney for Jorge Migliaccio, Blue Star Holdings Corp., and Blue Star Consulting Ltd.*<br><br>Paul Aiello, Esq.<br>paiello@baclawfirm.com<br>Bennett Aiello & Cohen<br>25 Southeast Second Avenue, Eighth Floor<br>Miami, FL 33131-1603<br>Telephone No: (305) 358-9011<br>Facsimile No: (305) 358-9012<br><br>*Attorney for Agrasun Holdings, Inc. and Agrasun, Inc.* |